| | |
|---|---|
| AGCS MARINE INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BIGGE CRANE AND RIGGING CO., and | ) |
| CRANE AND EQUIPMENT | ) |
| FINANCING CO., LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, AGCS Marine Insurance Company ("Allianz"), by its attorneys, for its Complaint for Declaratory Judgment against Defendants, Bigge Crane and Rigging Co., and Crane and Equipment Financing Co., LLC (collectively, "Bigge"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201 arising from a contract of property insurance.

2. Allianz issued an Inland Marine and Related Property Insurance Policy Number MXI93071690, to Defendants for the policy period of April 1, 2023 to April 1, 2024 ("Policy").

3. A true and correct copy of the Policy is attached as ***Exhibit A***.

4. Allianz seeks a declaration of its rights and obligations to Defendants under the terms of the Policy concerning reported losses arising from Defendants' business dealings with Applied Machinery Rentals, LLC dba Applied Machinery Sales ("AMS") and its former President, Garth E. McGillewie, Jr. ("McGillewie").

1

## THE PARTIES, JURISDICTION AND VENUE

5. Plaintiff, Allianz, is an Illinois corporation with its principal place of business in Chicago, Illinois.

6. Defendant, Bigge Crane and Rigging Company ("Bigge Crane") is a California corporation with its principal place of business in San Leandro, California.

7. Crane and Equipment Financing Co., LLC ("CEF") is a California limited liability corporation with all of its members being citizens of the State of California.

8. No member of CEF is a citizen of the State of Illinois.

9. Bigge Crane and CEF (collectively, "Bigge") share common ownership and management and operate out of the same headquarters in San Leandro, California.

10. On November 27, 2023, Bigge Crane filed a proof of claim ("Claim 79-1") in the bankruptcy case *In Re Applied Machinery Rentals, LLC*, which is pending as case number 23-30461 in the United States Bankruptcy Court for the Western District of North Carolina ("the Bankruptcy Court").

11. Bigge Crane amended Claim 79-1 the following day, November 28, 2023 ("Claim 79-2"). Both the initial proof of claim and the amended proof of claim were filed in the amount $15,175,384.54

12. Bigge Crane also filed a proof of claim ("Claim 81-1") on November 27, 2023 in the amount of $6,085,570.84.

13. The foregoing claims arise from the same nucleus of operative facts, in whole or in part, as the insurance claim made to Allianz.

14. Under 28 U.S.C. § 151, the Bankruptcy Court is a unit of this Court, and the filing of a proof of claim is consent to the jurisdiction of this Court.

15. The amount in controversy exceeds $75,000, exclusive of interest and costs.

16. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because this action is by and between citizens of different states, and the amount in controversy is in excess of the jurisdictional minimum.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

18. On or before July 12, 2023, Bigge discovered that its business partner, AMS, through McGillewie, had orchestrated a far-reaching and fraudulent scheme upon its various lenders, distributors, and customers, including Bigge ("the Scheme").

19. As it related to Bigge, the Scheme involved approximately 229 Merlo Telescopic Handlers, which are a type of hydraulic machine that is a combination tractor, forklift, and crane boom manufactured by an Italian company, Merlo (the "Telehandlers").

### The "Resale" Telehandlers

20. Through a series of written agreements, Bigge agreed to purchase 174 Telehandlers through AMS, and have them delivered to AMS at 1205 Galleria Blvd., Rock Hill, South Carolina 29730 (the "Resale Agreements"").

21. Under the Resale Agreements, AMS was authorized to market and sell the Telehandlers on behalf of Bigge, with the understanding that contemporaneously, upon consummation of a sale to a customer, AMS would: (1) purchase back from Bigge the sold Telehandler(s) and (2) pay Bigge the original purchase price, plus an agreed upon margin.

22. In the Resale Agreements, AMS warranted that the Telehandlers were free and clear of any encumbrances or third-party security interests and would remain so for the duration of each

3

contract. It was also agreed that AMS would sell all of the Telehandlers by an agreed upon date, or be subject to certain default remedies.

23. AMS breached the Resale Agreements and never repurchased any of the Telehandlers, as contemplated by the Resale Agreements.

## The Leased Telehandlers

24. Between December 2017 and July 2022, Bigge also entered into 55 Bare Equipment Lease Agreements with AMS (the "Lease Agreements"), involving 55 Telehandlers (the "Leased Handlers").

25. Under the terms of the Lease Agreements, AMS agreed to order the Leased Handlers directly from Merlo in Italy, the Leased Handlers were to be shipped to AMS, which would pick them up at the port and put them on lease.

26. However, AMS failed to fully pay Bigge for the Leased Handlers, and AMS failed to return the Leased Handlers to Bigge.

## The AMS Bankruptcy

27. A receiver was appointed for AMS on June 16, 2023.

28. On July 17, 2023, the receiver filed a voluntary petition under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq., which was assigned case number 23-30461 in the Bankruptcy Court (the "AMS Bankruptcy").

29. Cole Hayes was appointed as the chapter 7 trustee for the bankruptcy estate of AMS (the "Trustee").

30. On October 14, 2023, the AMS Bankruptcy Trustee filed a motion seeking approval to auction certain Telehandlers free and clear.

31. According to the Trustee, AMS operated a criminal enterprise similar to a "Ponzi scheme."

32. Specifically, the Trustee asserted that – since its formation – McGillewie was the sole member, principal, president, and CEO of AMS, which he ran as a "criminal enterprise."

33. According to the Trustee, McGillewie obtained loans to finance the purchase of the Telehandlers, representing to his lenders that AMS would lease the equipment to customers and use the lease payments to repay the loans, when, in fact, McGillewie "sold the telehandlers 'out of trust' to third parties without the lenders' knowledge or consent, and without remitting the sale proceeds to the lenders."

34. The Trustee contends, based on information and belief, that McGillewie "also pledged Merlo Telehandlers that did not exist to lenders" and "pledged the same Merlo Telehandlers to multiple lenders representing that each lender had a first-priority lien."

35. The Trustee contends that a "core component of [McGillewie's] fraudulent scheme included inducing creditors to purchase Merlo Telehandlers for less than fair market value and then, without the 'buyer' ever taking possession, lease the Merlo Telehandler back to [AMS] to then be leased to other parties."

36. The Trustee further contended that "[McGillewie] advertised these 'sales' as investments in the machines themselves" and "would promise exponential, perhaps unrealistic, returns on these investments." However, according to the Trustee, "in reality, [McGillewie] would simply use the purchase money/investment to repay the preexisting creditors and/or investors who previously bought into his scheme or divert cash to his family."

37. According to the Trustee, "this fraud constituted a Ponzi scheme."

38. The Trustee also reported that AMS held an interest in numerous machines, which were the subject of overlapping interests asserted by other parties, including Bigge.

39. On November 16, 2023, the Bankruptcy Court granted the Trustee's motion, permitting the sale of certain Telehandlers, including the three in which Bigge (among others) claimed an interest.

40. The Trustee continues to make motions seeking to resolve competing disputes over Telehandlers, and the bankruptcy proceedings are continuing to reveal multiple creditors asserting ownership interests in the same Telehandlers (or in the same description and serial numbers provided by AMS to such lenders.)

**The Insurance Claim**

41. On July 28, 2023, Bigge notified Allianz that it was making a claim under the Policy for its financial losses associated with the Scheme (the "Claim"). The amount of the Claim was ultimately reported by Bigge to exceed $38 million.

42. Allianz investigated the Claim under a full a reservation of its right to deny coverage.

43. On March 11, 2024, Allianz denied coverage for the Claim.

44. A true and correct copy of the email and denial letter sent by Allianz is attached as ***Exhibit B***.

45. The coverage dispute over the application of the Policy coverage for the Claim is an actual case and controversy that is ripe for judicial resolution.

**COUNT I**
**(No Direct Physical Loss or Damage to Covered Property)**

46. Allianz repeats, re-alleges and incorporates by reference each of the allegations contained in the above paragraphs 1-45 as if fully set forth herein.

6

47. When applicable, the Policy's Construction Block Coverage affords $50 million in coverage, subject to Endorsement 008 (which defines NBV as the Net Book Value per schedule on file with AGCS Marine dated 02/01/2023), for "Your" equipment, tools, and machinery, subject to a $250,000 deductible (per Endorsement 005).

48. Based on the Construction Block Declarations (Form CB 4700DEC 07 17), Bigge purchased Coverage A.1.a.(1) of the Construction Block (Form CB 4710 10 16), which provides:

> **A. Coverage**
> "We" will pay for "Loss" to Covered Property from any of the Covered Causes of Loss.
> **1. Covered Property**
>   a. Covered Property means:
>     **(1)** "Your" equipment, tools and machinery, including spare parts, repair parts and accessories that "you" own or for which "you" are liable.
>
> \*\*\*
>
> **2. Covered Causes of Loss**
> Covered Causes of Loss means Risks of Direct Physical Loss or Damage to Covered Property from any external cause except those causes of loss listed in the Exclusions.
>
> \*\*\*

49. Under Insuring Agreement A.1.a.(1), Allianz will pay "Loss" to Covered Property caused by a Covered Cause of Loss.

50. Covered Property is defined as: "'Your' equipment, tools and machinery, including spare parts, repair parts and accessories that 'you' own or for which 'you' are liable."

51. The Policy, as set out in the Construction Block Coverage Form in Section F, Definitions, at paragraph 9, defines "Loss" as "direct and accidental physical loss, destruction or damage caused by a Covered Cause of Loss external to any Property."

52. Bigge entered into various business agreements with AMS, in which it wired money to AMS based on representations that AMS would use such money to purchase certain identified Telehandlers from Merlo on Bigge's behalf.

53. Bigge has not provided any evidence that AMS, in fact, purchased the Telehandlers, as opposed to using Bigge's funds for other, unauthorized purposes.

54. The AMS Bankruptcy also established that Bigge, along with numerous other parties, was defrauded by AMS, which perpetrated a criminal scheme.

55. Because a physical change or permanent dispossession of property has not been substantiated by Bigge, and Bigge has not shown that AMS ever actually purchased any of the Telehandlers, Insuring Agreement A.1.a.(1) is not triggered and no coverage is available under the Policy for the Claim.

56. As Bigge has not shown that it has sustained any "Loss" to its "Covered Property", Allianz is entitled to a declaration that it owes no coverage to Bigge under the Policy for the Claim.

## COUNT II
### (In the Alternative, Policy Exclusions)

57. Allianz repeats, re-alleges and incorporates by reference each of the allegations contained in the above paragraphs 1-56 as if fully set forth herein.

58. AMS, and its former President, McGillewie, operated a fraudulent scheme for multiple years in which AMS made certain promises to various lenders, distributors, and customers in exchange for millions in funding of equipment, sight unseen.

59. To the extent that Bigge could substantiate any "Loss" to "Covered Property", the following Policy exclusions would bar coverage:

B. **Exclusions**

***

2. "We" will not pay for loss or damage caused by or resulting from any of the following:

***

d. Dishonest or criminal act committed by:

   (1) "You," any of "your" partners, "Employees," directors, trustees, or authorized representatives;

   (2) A manager or a member if "you" are a limited liability company;

   (3) Anyone else with an interest in the Covered Property, or their employees or authorized representatives; or

   (4) Anyone else to whom the Covered Property is entrusted for any purpose.

   This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

   This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by "your" employees. But theft by "Employees" is not covered.

***

f. Voluntary parting with any property by "you" or anyone entrusted with the Covered Property.

g. Unauthorized instructions to transfer property to any person or to any place.

***

## Dishonest or Criminal Acts Exclusion

60. AMS and McGillewie were Bigge's business partners with respect to the Telehandlers that were the subject of the Claim.

61. Alternatively, AMS and McGillewie were authorized representatives of Bigge with respect to the Telehandlers that were the subject of the Claim.

62. To the extent the Telehandlers that were the subject of the Claim actually existed, the Telehandlers were entrusted by Bigge to AMS.

9

63. Accordingly, to the extent Bigge can substantiate any "Loss" to "Covered Property" within the insuring agreement of the Construction Block portion of the Policy, such loss would be barred under Exclusion B.2.d.

## Voluntary Parting Exclusion

64. Under the terms of the Resale Agreements, AMS provided "quotes" to Bigge, identifying certain Telehandlers, and Bigge, in turn, would issue payments to AMS for the identified Telehandlers.

65. It was mutually agreed that all Telehandlers would be delivered to AMS' possession at its Rock Hill, South Carolina facility and held there for AMS to market, sell or lease to third party customers.

66. All of the Telehandlers that were the subject of the Claim were voluntarily entrusted by Bigge to the possession of AMS.

67. AMS breached that trust. Accordingly, to the extent Bigge can substantiate any "Loss" to Covered Property within the insuring agreement of the Construction Block portion of the Policy, such loss would be barred under Exclusion B.2.f.

## Unauthorized Transfer Exclusion

68. According to the Trustee and the information provided to Allianz by Bigge, AMS may have transferred or sold certain Telehandlers to third parties, without the knowledge or permission of certain AMS' creditors, including – in some instances – Bigge.

69. In response to Allianz's inquiries regarding any unauthorized sales by AMS to third parties, Bigge provided 140 invoices, generated by AMS, which purport to "sell" certain Telehandlers (identified by make, model, serial number) to third parties in 2021, 2022, and 2023.

70. These sales were neither known to nor authorized by Bigge.

71. Bigge first learned of the sales at its June 2023 audit of AMS.

72. Accordingly, to the extent Bigge can substantiate any "Loss" to "Covered Property" within the insuring agreement of the Construction Block portion of the Policy, due to AMS' unauthorized "sale" and transfer of Telehandlers to third parties, such "Loss" would be barred by Exclusion B.2.g.

WHEREFORE, Plaintiff, AGCS Marine Insurance Company, respectfully requests that this Court enter a judgment in its favor, determining and declaring that the Policy does not provide coverage for the Claim, and for its costs and such other and further relief as the Court may deem just and equitable.

Respectfully submitted,

/s/ H. Mark Hamlet
H. Mark Hamlet
N.C. Bar No.: 19955
HAMLET LAW
5215 Junction Park Circle, Suite 202
Wilmington, NC 28412
Tel: (910) 777-5995
Fax: (910) 399-4277
Email: mhamlet@hamlet-law.com

*Attorneys for Plaintiff, AGCS Marine Insurance Company*

*Pending Admission Pro Hac Vice*

Matthew S. Ponzi
John Eggum
FORAN GLENNON PALANDECH PONZI & RUDLOFF, PC
222 North LaSalle Street, Suite 1400
Chicago, IL 60601
Tel: (312) 863-5000
Fax: (312) 863-5099
Email: mponzi@fgppr.com
       jeggum@fgppr.com