IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00355-KDB-SCR

| | |
|---|---|
| AGCS MARINE INSURANCE COMPANY,<br><br>**Plaintiff,**<br><br>v.<br><br>CRANE AND EQUIPMENT FINANCING CO., LLC AND BIGGE CRANE AND RIGGING CO.,<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendants' Bigge Crane and Rigging Co. ("Bigge") and Crane and Equipment Financing Co., LLC's ("CEF") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, for Discretionary Dismissal (Doc. No. 12) and Plaintiff AGCS Marine Insurance Company's ("Allianz") Motion for Judicial Notice (Doc. No. 28). The Court has carefully considered this motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** both motions and **DISMISS** the Complaint.

### I.    FACTS AND PROCEDURAL HISTORY

This case arises out of an Inland Marine and Related Property Insurance policy ("the Policy") issued by Plaintiff Allianz to Defendants Bigge and CEF. *See* Doc. No. 1 at ¶ 2. The Policy was issued to the Defendants in California through a California insurance broker on March 30, 2023, and was active from April 1, 2023, through April 1, 2024. Doc. No. 1-1 at 5. The Policy appears to be governed by California law. *Id.* at 6-7 (noting California state specific documents in

1

the Policy), 8 (directing the insured to contact the California Department of Insurance for issues regarding the Policy).

Bigge and CEF, both of which are incorporated in California and have their principal places of business in the same, had previously entered into several agreements with Applied Machinery Rentals, LLC d/b/a Applied Machinery Sales ("AMS"), a South Carolina company, to buy and then resell "telehandlers," a hydraulic machine that is a combination of a tractor, forklift, and crane boom. *Id.* at ¶¶ 19-20. Under resale agreements between the parties, AMS was authorized to market and sell telehandlers on Defendants' behalf. *Id.* at ¶ 21. The parties also entered into a lease agreement involving telehandlers in which AMS agreed to order the telehandlers directly from the manufacturer in Italy, which it would then pick up at a designated port and put on lease. *Id.* at ¶ 25. However, things were allegedly not as they seemed.

When Bigge conducted a physical audit at AMS in June 2023, it discovered that some telehandlers could not be located nor was there confirmation they had ever been in AMS's possession. Doc. No. 1-2 at 8. At least one of the telehandlers had been sold to another company without Bigge's knowledge. *Id.* Moreover, AMS failed to fully pay Defendants for the leased telehandlers or return them to the Defendants after their failure to pay. Doc. No. 1 at ¶ 26. By mid-July 2023, Defendants came to believe that AMS had engaged in a far-reaching fraudulent scheme not only against the Defendants, but many other lenders, distributors, and customers. *Id.* at ¶ 18.

AMS was forced to file for bankruptcy under Chapter 7 of the Bankruptcy Code and a receiver was appointed for AMS. *Id.* at ¶¶ 27-28. Attempting to recoup their losses, on July 28, 2023, Defendants submitted a claim to Plaintiff under the Policy seeking more than $38 million. *Id.* at ¶ 41. On March 11, 2024, Plaintiff denied coverage. *Id.* at ¶ 43. Shortly thereafter on March 29, 2024, it filed suit in this Court seeking a declaratory judgment affirming its decision to deny

coverage. *See* Doc. No. 1. Since this action was filed, Defendants have filed their own action in California state court against Allianz (the "California action") seeking declaratory judgment and damages resulting from an alleged breach of contract. *See* Doc. No. 13-2 at 4. Plaintiff removed the California action to federal court, where it is currently pending. *See* Doc. No. 27 at 21. Now before the Court is Defendants' motion to dismiss, which is ripe for the Court's review.

## II. DISCUSSION

### A. Personal Jurisdiction

Defendants' first argument is that the Court lacks personal jurisdiction over them. There are two types of constitutionally permissible personal jurisdiction: general and specific. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (referring to general jurisdiction as "all-purpose" jurisdiction and specific jurisdiction as "case-linked" jurisdiction). Plaintiff contends that the Court may exercise general jurisdiction over Bigge and specific jurisdiction over both Bigge and CEF. For the reasons discussed below, the Court finds that it has neither type of personal jurisdiction over Defendants.

#### 1. General Jurisdiction

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (emphasis in original) (citing *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 564 U.S. 915, 919 (2011)). General jurisdiction "requires continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009) (internal quotations omitted). For a corporation, "the paradigm forum for

3

the exercise of general jurisdiction is…. the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citations omitted).

Defendants are incorporated in California and have their principal place of business in the same. Doc. No. 1 at ¶¶ 6-7, 9. Plaintiff acknowledges this, but points to *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023), to support its argument that general jurisdiction exists because Defendant Bigge has a registered agent and office in North Carolina. *See* Doc. No. 27 at 1-2. The Court disagrees. In *Mallory*, the Supreme Court upheld a Pennsylvania law that explicitly required out-of-state corporations wishing to register with the Department of State (in order to do business in Pennsylvania) to consent to the exercise of general personal jurisdiction over them in Pennsylvania state courts. 600 U.S. at 134. No equivalent law exists in North Carolina. *See Bancredito Holding Corp. v. Driven Admin. Servs. LLC*, No. 5:23-CV-00575-M, 2024 WL 731956, at *3 (E.D.N.C. Jan. 8, 2024) ("*Mallory* is inapposite because North Carolina law, unlike that of Pennsylvania, does not require foreign corporations that register to do business in North Carolina to also consent to suit in the state."); *Sebastian v. Davol, Inc.*, No. 5:17-cv-00006-RLV-DSC, 2017 WL 3325744, at *11 (W.D.N.C. Aug. 3, 2017) ("Without an indication that North Carolina statutorily requires a corporation to consent to general jurisdiction in order for that corporation to actually conduct business in North Carolina, this Court cannot find that Defendants consented to general jurisdiction in North Carolina."); *Zhang v. United Health Grp., Inc.*, No. 5:23-CV-00194-KDB-SCR, 2024 WL 3576456, at *5 (W.D.N.C. June 28, 2024), *report and recommendation adopted,* No. 5:23-CV-00194-KDB-SCR, 2024 WL 3571740 (W.D.N.C. July 29, 2024), *adhered to on reconsideration*, No. 5:23-CV-00194-KDB-SCR, 2024 WL 3643257 (W.D.N.C. Aug. 1, 2024) (same).

The statute governing the authority to transact business in North Carolina requires foreign corporations to obtain a certification from the North Carolina Secretary of State, but does not explicitly require them to consent to general personal jurisdiction. *Compare* N.C. Gen. Stat. § 55-15-01 *with* 42 Pa. Cons. Stat. § 5301(a) ("Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth…. shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction.").[1]

Moreover, expanding the holding of *Mallory* to exercise general personal jurisdiction here "would require any foreign corporation registered to do business within a state, regardless of where it was incorporated or had its principal place of business and regardless of its contacts with a state, to submit to personal jurisdiction within the state. This plainly exceeds the very limited scope of *Mallory*." *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. CV 2:18-2873, 2023 WL

---

[1] Plaintiff urges the Court to consider a North Carolina venue statute that states the residence of a foreign corporation (which has a certification of authority from the Secretary of State) is in the place where the corporation has its registered office, a place a business, or where it regularly engages in business. N.C. Gen. Stat. § 1-79. However, not only is this statute applicable to venue rather than personal jurisdiction analysis, it would not allow suit in this case.

Even if the Court were to find that Bigge "resides" in North Carolina under this venue statute, an action against a foreign corporation may only be brought in the county in which the cause of action arose, the corporation usually did business, or resides, in the following cases: "(1) By a resident of this State, for any cause of action. (2) By a nonresident of this State in any county where he or they are regularly engaged in carrying on business. (3) By a plaintiff, not a resident of this State, when the cause of action arose or the subject of the action is situated in this State." N.C. Gen. Stat. Ann. § 1-80. Not only do the facts of this case fail to satisfy any of the three enumerated circumstances, but the existence of the three categories demonstrates that foreign corporations do not subject themselves to general jurisdiction in this state merely by registering with the Secretary of State. If they did, the delineation of classes of permissible cases in the venue statutes, two of which hew closely to the specific personal jurisdiction analysis, would be unnecessary.

The Court further notes that the documents provided by Plaintiff show that Bigge's registered office is in Raleigh, North Carolina, which is not in the Western District, making their argument that venue exists in this District even less persuasive. *See* Doc. No. 29-1 at 3.

Accordingly, this statute neither supports the exercise of personal jurisdiction or venue in this matter.

6846676, at *5 (D.S.C. Oct. 17, 2023). Because *Mallory* does not apply to these circumstances and the Defendants are not residents of North Carolina, the Court finds that it lacks general personal jurisdiction over the Defendants.

## 2. Specific Jurisdiction

Specific jurisdiction depends on "an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 918 (citations omitted). A court may exercise specific jurisdiction over a nonresident defendant if doing so comports with both the forum state's long-arm statute and the Fourteenth Amendment Due Process Clause. *See, e.g.*, *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). In North Carolina, where the long-arm statute extends personal jurisdiction to the limits of the Fourteenth Amendment's Due Process Clause, "the statutory inquiry merges with the constitutional inquiry." *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

Under the Fourteenth Amendment Due Process analysis, a court may exercise personal jurisdiction "if the defendant has 'minimum contacts' with the forum, such that to require the defendant to defend its interest in that state 'does not offend traditional notions of fair play and substantial justice.'" *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To determine whether specific jurisdiction exists, the Court must consider "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst*, 334 F.3d at 396 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002)).

Here, the Court finds that it may not exercise specific personal jurisdiction. Defendants did not meaningfully avail themselves of the privileges of conducting activities in this state. Although Bigge has registered to do business in North Carolina,[2] it has no offices, employees, bank accounts, rental locations, or real property in the state. *See* Doc. No. 13-1 at 2. CEF is not registered to do business in North Carolina, nor does it have offices, employees, bank accounts, rental locations, or real property in the state. *Id.* Instead, the Policy was issued to Bigge in California through its California broker. *See* Doc. No. 1-1 at 3, 8. Indeed, the Policy itself directs Bigge to contact the California Department of Insurance for issues surrounding the Policy meaning that not only was the contract formed in California, but also it applies California state law and is regulated by the state government. *Id.* at 8. Moreover, even the loss amount in dispute among the parties arises from Defendants' dealings with AMS in South Carolina, not North Carolina. *See* Doc. No. 13-1 at 3. Defendants' only contact with North Carolina is filing a claim in the AMS bankruptcy case, which is pending in this District after several entities' bankruptcies were consolidated. That limited contact, however, is not a contact with North Carolina that gives rise to specific personal jurisdiction because Plaintiff's claim does not arise out of that limited contact.

Here, the issue is whether Plaintiff correctly denied insurance coverage to Defendants under the policy, not how much of the bankruptcy estate might be awarded to Defendants. In other words, this action is *only* meant to determine whether Plaintiff correctly denied benefits under the Policy. Thus, this claim does not arise out of any contacts with North Carolina because it addresses benefits under a California insurance policy governed by California law.

---

[2] Plaintiff has filed a motion requesting the Court take judicial notice of several public records from the North Carolina Secretary of State regarding Bigge's registration. *See* Doc. No. 28. Seeing no objection from the Defendants, the Court will grant the motion and consider those records.

Moreover, the Court does not find that the exercise of personal jurisdiction would be reasonable. Plaintiff contends that witnesses and evidence are present in this District, however, as described by Plaintiff, those individuals and the evidence relate to the subject matter of the bankruptcy case, not the questions of insurance contract interpretation raised in this case. *See* Doc. No. 27 at 2-3. Defendants point out that witnesses relevant to those issues are in California and Texas. *See* Doc. No. 31 at 10. Thus, given that the witnesses and evidence are most likely not located in this District, and Defendants have only minimal and unrelated contacts with North Carolina, the exercise of personal jurisdiction would be unreasonable.

The Court, therefore, finds that it lacks personal jurisdiction over the Defendants.

### B.  Exercise of Discretion for Declaratory Judgment

In the alternative, the Court would still dismiss this case in the exercise of its discretion to decline jurisdiction over declaratory judgment actions. Federal law provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon filing an appropriate pleading, *may* declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). District courts enjoy "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). They may accordingly decline jurisdiction over a declaratory judgment act "for good reason," but their discretion is not "unfettered." *Artful Color, Inc. v. Hale*, 928 F. Supp. 2d 859, 861 (E.D.N.C. 2013) (citing *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d 321, 324 (4th Cir.1937)).

In considering whether to decline jurisdiction over a declaratory judgment action, the Court must first consider whether the action will (1) serve a useful purpose in clarifying and resolving the legal relations at issue and (2) grant relief from the uncertainty, insecurity, and controversy

8

giving rise to the proceeding. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (citing *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). In situations where "an insurer came to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured was pending in state court," the Court must also consider the considerations of comity, efficiency, and federalism. *Id.* (citing *Mitcheson v. Harris*, 955 F.2d 235, 237–40 (4th Cir.1992)); *see also State Farm Fire and Cas. Co. v. Taylor*, 118 F.R.D. 426 (M.D.N.C. 1988).

> Specifically, the Court should consider:
>
>> (i) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (iii) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law.

*Aetna Cas. & Sur. Co.*, 139 F.3d at 422 (internal quotation marks and citation omitted). The Court must also consider whether the action is being used for "procedural fencing," meaning the plaintiff is depriving the true coercive plaintiff of the ability to pick their preferred forum. *Id.* at 423.

This case will only partially resolve the legal relations at issue. Plaintiff only seeks a declaration that it owes no coverage to Defendants under the Policy. *See* Doc. No. 1 at ¶ 56. If coverage is owed, the appropriate amount recoverable would still need to be determined in the pending California case (or yet another case). In contrast, all the relevant issues can be addressed in the California case.

The Court must also consider the factors specific to the existence of the other similar action. The "existence of such a proceeding should be a significant factor in the district court's determination," although "it is not dispositive." *Aetna Cas. & Sur. Co.*, 139 F.3d at 423. "This is

9

particularly true, when, as here, there are bona fide reasons for the lack of any pending state court action." *Id.* Here, Plaintiff issued its letter denying insurance coverage on March 11, 2024. *See* Doc. No. 1-2 at 2. It then filed this action shortly thereafter on March 29, 2024, asking the Court to decide whether it correctly denied coverage under the Policy pursuant to the California contract. *See* Doc. No. 1. On May 17, 2024, Defendants filed an action in California state court for breach of contract and declaratory relief. *See* Doc. No. 13-2 at 4. Plaintiff then removed the case to federal court. Thus, there not only was a pending state action, filed reasonably soon after this case was initiated, but there is a bona fide reason why Defendants are not litigating their state law claims in state court. Plaintiff's argument that because the case has been removed to federal court it is exempt from this analysis is unpersuasive because this maneuver appears to be an exercise in procedural fencing and forum shopping, which expressly weights in favor of declining jurisdiction.

Moreover, California has a strong state interest in litigating this case. The dispute is over a California insurance policy that presumably will be decided under California contract principles. As discussed above, this Court is not the most efficient forum to resolve the dispute based on the posture of the case and the narrow scope of the issues. Further, because there are overlapping questions of California state law, it would be more efficient to allow the court most familiar with those issues to resolve them.

This Court accordingly, in the alternative, finds that the goals of efficiency, federalism, and comity weigh in favor of declining jurisdiction over this case and exercises its discretion to decline jurisdiction on those grounds.

### III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Judicial Notice (Doc. No. 28) is **GRANTED**;

2. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, for Discretionary Dismissal (Doc. No. 12) is **GRANTED**; and

3. The Clerk is directed to close this matter in accordance with this Order;

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 14, 2024

Kenneth D. Bell
United States District Judge